Barry W. Bedene, President Kansas State Board of Mortuary Arts 700 S.W. Jackson Street, Suite 904 Topeka, Kansas 66603-3733
Dear Mr. Bedene:
As President of the Kansas State Board of Mortuary Arts, you ask several questions regarding the trust fund provision[1] of the Prearranged Funeral Agreements Act.[2] We understand your questions as follows:
 (1) Is final disposition of pre-need funds held in trust pursuant to K.S.A. 16-308 governed by the provisions of K.S.A. 16-304?
 (2) If so, may a trust agreement between a seller of pre-need funeral services or burial merchandise and a purchaser lawfully provide for the seller to receive all trust funds at the time of need, even if that amount exceeds the actual cost of the services or merchandise?
 (3) In the context of a pre-need trust, may a seller assess a "finance charge" against a purchaser who pays for pre-need funeral services or burial merchandise on an installment plan?
 (4) If so, does such "finance fee" inure to the benefit of the seller, the corporate trustee or the trust?
Your questions arise in relation to a proposed pre-need funeral contract that came to the Board's attention. You have provided us with a copy of that contract and its accompanying "Installment Schedule." That proposed plan contemplates funds held in trust on behalf of the purchaser sufficient to pay for a funeral service at a fixed cost at the time of need. During the intervening years the trust fund would grow due to interest or earnings. The plan further contemplates that once the seller-funeral establishment has fulfilled its responsibilities by providing a funeral service or merchandise at the cost established, the funeral establishment would receive any amount in the trust in excess of that cost. Further, the attached "Installment Schedule" indicates that in addition to the sales price of the prearranged funeral, the purchaser would pay a set monthly finance charge, "which shall not be deposited into Funeral Home's Pre-need Trust but rather paid to Funeral Home to offset its administration costs and other costs increases."
The Prearranged Funeral Agreements Act creates two financial methods by which a person may arrange for final disposition, funeral or burial services or merchandise prior to an immediate need. Within the funeral industry, such arrangements are commonly referred to as "pre-need" arrangements. The seller of such services or merchandise is frequently a funeral establishment, but may be any person, association, partnership, firm or corporation.[3]
One method allows the seller to deposit "all funds" received pursuant to a pre-need agreement, contract or plan in a bank, credit union or savings and loan association "in a separate account in the name or names of the purchaser of the merchandise or services and the name of the seller until released"[4] as provided in the Act. Funds so deposited are "subject to the terms of an agreement for the benefit of the purchaser of the agreement, contract or plan."[5] Unless the plan is made revocable, all payments, as well as earnings or interest, remain in the account until the death of the person for whose funeral and/or burial the funds were paid.[6]
The second method allows the seller to place "all money" received by the seller with a corporate trustee designated in the pre-need contract.[7] Such money, plus any interest and earnings, must be held by the corporate trustee either in separate accounts or invested collectively with interest and earnings shared on a proportionate basis.[8] Again, all money paid to a corporate trustee, plus all interest and earnings, must be held by the trustee "for the benefit of the purchaser."[9]
Additionally, we believe it important to reiterate that Attorney General Opinion No. 98-40 concluded that prearranged funeral contracts may be administered by an out-of-state trustee but that all funds, whether held in separate joint accounts[10] or held in trust by a corporate trustee,[11] must be deposited in a qualifying Kansas bank or credit union.
In answer to your first question, K.S.A. 1999 Supp. 16-304 controls disposition of account funds under either method of prepayment. Upon verification of death of the person for whom the pre-need arrangement was made, the bank, credit union or savings and loan association pays the seller from account funds for the funeral service and merchandise as previously agreed between purchaser and seller.[12] Finally, and importantly for purposes of this opinion,
"If any balance remains in the fund after disposition of the fund in accordance with the terms of the agreement, contract or plan such balance shall inure to the benefit of the estate of the purchaser of the agreement, contract or plan."[13]
Because the "terms of the agreement"[14] are required to be "for the benefit of the purchaser,"[15] as opposed to the benefit of the seller, any funds not required for payment of funeral or burial services or merchandise must be paid to the estate of the (now deceased) purchaser. Consequently in response to your second question, a trust agreement between a seller of pre-need funeral services or burial merchandise and a purchaser may not lawfully provide for the seller to receive trust funds at the time of need in excess of the cost of the services or merchandise established in the agreement. Any remaining balance inures to the benefit of the estate of the purchaser of the agreement, contract or plan.
Your third question concerns the propriety of a pre-need contract that establishes a "finance charge" paid to the seller by the purchaser on an installment payment plan to cover the seller's administrative and other cost increases. You inform us that the anticipated "finance charge" would be included in the purchaser's monthly payment to the seller. The full payment would then be transferred by the seller to the corporate trustee who would then pay the amount of the "finance charge" to the seller instead of depositing it in the trust account.
K.S.A. 16-308 requires that all money received by the seller be paid to the corporate trustee who is then required to hold all money so paid, as well as interest and earning thereon, for the benefit of the purchaser. While the corporate trustee is authorized to charge reasonable expenses for administering the trust, the trustee is not authorized to act as the seller's agent by receiving and disbursing a seller's "finance charge." However, we hasten to add that K.S.A. 16-308 does allow the trust indenture to provide for a corporate trustee to compensate a seller for services the seller performs for the corporate trustee. Such compensation is limited to an annual fee of 1% of the current fair market value of the trust.
Having answered your third question in the negative, it appears unnecessary to respond to your fourth question.
The Kansas Supreme Court has found the Prearranged Funeral Agreements Act to consist of "reasonable regulations within the scope of the police power, fairly designed to protect the public from evils which might otherwise occur."[16] The Act was designed to place tight controls over the care of money paid by persons well in advance of actual need of funeral services and accompanying merchandise. Because "a great lag time [exists] between the time of bargaining and performance . . . , there is a public interest in the protection of funds intended for a particular purpose, from whatever hazard, whether the normal vicissitudes of business or plain fraud and deceit."[17] Prepaid funeral agreements are to provide a way for a person to responsibly plan for the one future inevitability, not to provide a way for sellers of such plans to increase their profits through hidden "finance charges" or a small print contractual provision that would return excess trust funds to them.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Camille Nohe Assistant Attorney General
CJS:JLM:CN:jm
[1] K.S.A. 16-308.
[2] K.S.A. 16-301 et seq.
[3] K.S.A. 16-301.
[4] K.S.A. 16-302.
[5] K.S.A. 16-301.
[6] K.S.A. 1999 Supp. 16-303.
[7] K.S.A. 16-308.
[8] Id.
[9] Id.
[10] K.S.A. 16-302; K.S.A. 1999 Supp. 16-303.
[11] K.S.A. 16-308.
[12] K.S.A. 1999 Supp. 16-304.
[13] Id.
[14] Id.
[15] K.S.A. 16-301.
[16] State, ex rel., v. Anderson, 195 Kan. 649, 659 (1965).
[17] Id. at 655.